

1   JOHN BLIM (*PRO HAC VICE* pending)
2   JAY EDELSON (*PRO HAC VICE* pending)
    MYLES MCGUIRE (Of Counsel) (*PRO HAC VICE* pending)
    BLIM & EDELSON, LLC
3   53 West Jackson Boulevard
    Suite 1642
4   Chicago, Illinois 60604
    Telephone: (312) 913-9400
5   Facsimile: (312) 913-9401

6   JOHN G. JACOBS (*PRO HAC VICE* pending)
    BRYAN G. KOLTON (*PRO HAC VICE* pending)
7   THE JACOBS LAW FIRM, CHTD.
    122 South Michigan Avenue
8   Suite 1850
    Chicago, Illinois 60603
9   Telephone: (312) 427-4000
    Facsimile: (312) 427-1850
10

    TERRY M. GORDON - SBN 75604
11  LAW OFFICES OF TERRY M. GORDON
    Three Harbor Drive, Suite 317
12  Sausalito, California 94965
    Telephone:    (415) 331-3601
13  Facsimile:    (415) 331-1225

14  ATTORNEYS FOR PLAINTIFFS

15

16                  IN THE UNITED STATES DISTRICT COURT

17                  NORTHERN DISTRICT OF CALIFORNIA

18  RUSSELL BRADBERRY, individually and      ) Case No.
    on behalf of a class of similarly situated  )
19  individuals,                             ) **COMPLAINT FOR DAMAGES**
                                             ) **AND INJUNCTIVE RELIEF**
20              Plaintiff,                   )
                                             )
21  v.                                       )
                                             ) DEMAND FOR JURY TRIAL
22  T-MOBILE USA, INC., a Delaware           )
    corporation                              )
23                                           ) **CLASS ACTION**
                Defendant.                   )
24

25

26

27

28
    _____
    **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1

## CLASS ACTION COMPLAINT

2

Plaintiff Russell Bradberry ("Bradberry"), on behalf of himself a class and sub-class

3

of similarly situated individuals, brings this class action against T-Mobile USA, Inc. ("T-

4

Mobile") seeking to stop T-Mobile's unlawful practice of "recycling" "dirty" cellular

5

telephone numbers, which practice has resulted in unauthorized charges to customers'

6

accounts, and to obtain redress for all persons injured by T-Mobile's conduct. Plaintiff, for

7

his class action complaint, alleges as follows upon personal knowledge as to himself and his

8

own acts and experiences, and, as to all other matters, upon information and belief, including

9

investigation conducted by his attorneys.

10

## NATURE OF THE CASE

11

12

1.    In a widespread industry practice little known by those outside the industry,

13

T-Mobile routinely "recycles" so-called "dirty" telephone numbers to its customers when

14

they sign up for new cellular telephone service. The numbers are "recycled" in that they

15

were previously owned and/or used by other persons or entities. The numbers are "dirty" in

16

that they are encumbered with pre-existing billing obligations for products and services

17

authorized to be purchased, if at all, by the previous owners and/or users of those numbers.

18

2.    T-Mobile's practice of re-issuing "dirty" phone numbers has resulted in

19

unauthorized charges being placed on unsuspecting customers' telephone bills, in an illegal

20

practice known as "cramming." For years, T-Mobile has systematically, repeatedly and

21

without authorization, placed charges on customers' monthly bills for third-party services

22

(such as ring tones, joke-a-day programs, wallpaper, screensavers and other forms of

23

software provided by third-party vendors) that were never authorized to be purchased by the

24

current owners of the affected phone numbers, (a) in violation of federal statute; (b) in

25

breach of contract and the duty of good faith and fair dealing, (c) in violation of California

26

Public Utilities Code section 2890 and California Public Utilities Commission Revised

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  General Order 168, and (d) in violation of California Business and Professions Code
2  sections17200 and 17500 consumer fraud provisions.

3       3.      Because of T-Mobile's wrongful actions, Plaintiff seeks on behalf of himself
4  and the class members, money damages, injunctive and declaratory relief, costs, and
5  reasonable attorneys' fees.

6

7                                    **PARTIES**

8       4.      Plaintiff Russell Bradberry is a citizen of California.

9       5.      Defendant T-Mobile USA, Inc. ("T-Mobile") is a leading provider of cellular
10 telephone service in the United States. T-Mobile is a Delaware corporation with its principal
11 place of business in the State of New York. T-Mobile does business throughout the United
12 States, including the State of California and this judicial district.

13

14                                  **JURISDICTION**

15      6.      The Court has original jurisdiction over this action pursuant to 28 U.S.C. §
16 1331. It also has jurisdiction under section 1332(d), because (a) at least one member of the
17 putative class is a citizen of a state different from Defendant, (b) the amount in controversy
18 exceeds $5,000,000, exclusive of interests and costs, and (c) none of the exceptions under
19 that subsection applies to the instant action. This Court has supplemental jurisdiction over
20 the remaining counts under 28 U.S.C. § 1367.

21

22                                    **VENUE**

23      7.      Venue is proper in this district under 28 U.S.C. §§ 1391 (b) and (c).
24 ///
25 ///
26 ///
27
28 _____
   **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
                           3

1  **THE FACTS RELATING TO THE NAMED PLAINTIFF**

2  8.  On November 2, 2005, Plaintiff visited the store of an authorized T-Mobile

3  sales representative located in Visalia, California to purchase new cell phone service for his

4  personal use.

5  9.  On that same day, in exchange for a T-Mobile cell phone plan of 600

6  "anytime" minutes, Plaintiff agreed to pay T-Mobile $39.99 each month for a period of 12

7  months. (A copy of T-Mobile's Service Agreement with Plaintiff is attached hereto as

8  Exhibit A.)

9  10.  Upon execution of his Service Agreement and activation of his cellular

10  telephone account, T-Mobile provided Plaintiff a cellular phone number or "GSM #" (that is,

11  a Global System for Mobile Communications number) of "tmo+6194468694."

12  11.  Unbeknownst to Plaintiff, T-Mobile provided him with a recycled "dirty"

13  phone number -- one saddled with preexisting obligations, encumbrances and billing

14  arrangements for products and services authorized to be purchased, if at all, by the previous

15  owner(s) and/or user(s) of that number.

16  12.  Thus, beginning on or about November 2, 2005 -- the same day Plaintiff

17  obtained his cell phone number and started receiving service from T-Mobile -- and

18  continuing through at least April 28, 2006, Plaintiff's cell phone received multiple unwanted

19  "premium" text message calls on a near daily basis from a company called Cellfish Media,

20  LLC, f/d/b/a Lagardere Active North America, Inc. ("Cellfish"), a third-party seller of

21  cellular ringtone products and services. "Premium" text messages are apparently those that

22  include various forms of software, such as ringtones.

23  13.  Throughout the relevant period, Plaintiff received hundreds of such messages.

24  14.  At no time did Plaintiff authorize the purchase of said products and services

25  offered by Cellfish and at no time did Plaintiff consent to Cellfish's sending of text messages

26  to his telephone number.

27

28
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
4

1    15.    Throughout the relevant time period, T-Mobile billed Plaintiff for "premium"
2  text messaging charges of $0.50 for each incoming "premium" text message, in addition to
3  its standard charge of $0.05 per each incoming text message.

4    16.    At no time did Plaintiff authorize T-Mobile to bill him for said charges.

5    17.    In or about early 2006, Plaintiff contacted T-Mobile to inquire why his bills
6  were so high and was told that it was because of the premium text message calls he received
7  from Cellfish. Plaintiff advised T-Mobile that he did not authorize the purchase of said
8  products and services offered by Cellfish and that at no time did he consent to Cellfish's
9  sending of any text messages to his telephone number. Plaintiff then asked T-Mobile how he
10  could stop being sent these unauthorized messages from Cellfish for which he was being
11  charged by T-Mobile.

12    18.    T-Mobile never offered to remove the unauthorized charges from Plaintiff's
13  bill, never undertook to resolve the dispute to Plaintiff's satisfaction, never verified that
14  Plaintiff had, in fact, provided authorization to purchase products and services offered by
15  Cellfish, never verified whether Plaintiff had, in fact, provided consent to Cellfish's sending
16  of any text messages to his telephone number, and never verified that Plaintiff had, in fact,
17  provided authorization to bill his account for said charges. Rather, T-Mobile simply "passed
18  the buck," advising Plaintiff to contact Cellfish.

19    19.    On multiple occasions thereafter, Plaintiff attempted to contact Cellfish, but
20  was unable to speak directly with anyone at the company and instead was forced to leave
21  voice mail messages, which Cellfish failed to return.

22    20.    Plaintiff visited Cellfish's website (www.texttoy.com) and was informed that
23  to stop receiving text messages from Cellfish he would need to reply to one of its messages
24  with the word "STOP." Plaintiff followed those instructions, but instead of stopping the
25  unwanted messages, he began to receive even more such messages.

26
27
28
**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
5

1    21.    Having not heard from Cellfish and having had no success in stopping the

2    messages, Plaintiff once again contacted T-Mobile. In response, T-Mobile did nothing.

3    22.    Plaintiff, through his counsel, was finally able to contact Cellfish, through its

4    Director of Legal & Business Affairs, Lisa M. Weissberg. On May 11, 2006, Ms. Weissberg

5    provided Plaintiff's counsel what she described as "the initial, voluntary sign up by your

6    client for this service as of July 13, 2005. The messages received are not spam," Ms.

7    Weissberg claimed, "but messages related to the service that, according to the terms of use of

8    the service agreed to by your client, are being sent."

9    23.    The purported authorization to be billed for such charges was obtained from

10   an unidentified person with the same "GSM #" eventually assigned by T-Mobile to Plaintiff

11   ("tmo+6194468694"); however, the authorization for the subject charges was obtained on

12   July 13, 2005 – a date *more than three months prior* to the time that Plaintiff signed his

13   Service Agreement with T-Mobile, obtained that same cell phone number from T-Mobile, or

14   started receiving T-Mobile service.

15   24.    Plaintiff could not possibly have authorized the charges for which he was

16   being billed. He did not have any account with T-Mobile at that time. Indeed, from May

17   2005 until October 2005, Plaintiff was out of the country in the Persian Gulf serving in the

18   United States Navy aboard the U.S.S. Nimitz, without access to a working cellular phone.

19

20   **ADDITIONAL ALLEGATIONS APPLICABLE TO ALL COUNTS**

21   25.    T-Mobile is a telephone corporation and public utility as defined in California

22   Pub. Util. Code sections 216 and 234 and is certified by the California Public Utilities

23   Commission ("CPUC") to offer, and does in fact offer and sell, mobile cellular

24   telecommunication services throughout the State of California.

25   26.    T-Mobile uses uniform form contracts ("Service Agreements") under which

26   customers purchase cell phone services.

27

28

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1  27. T-Mobile's services include providing access to and billing for various third-

2  party services such as ring tones, joke-a-day programs, wallpaper, screensavers and other

3  forms of software provided by numerous third-party vendors with names such as Jamster, M

4  Qube, Cellfish Media LLC (f/k/a Lagardere Active North America, Inc.), and many others.

5  28. T-Mobile allows such third-party services to be billed directly on a customer's

6  monthly wireless bill.

7  29. Envisioning the potential for abuse, the California Legislature adopted

8  California Public Utilities Code section 2890 which provides, in relevant part, that: "(a) A

9  telephone bill may only contain charges for products or services, the purchase of which the

10  subscriber has authorized."

11  30. Public Utilities Code section 2890 was intended to deter the unlawful practice

12  of "cramming," *i.e.*, the placing of unauthorized charges on telephone bills, as defined in the

13  Legislative History of Public Utilities Code sections 2889.9 and 2890:

14  ["This bill addresses the problem of 'cramming,' a practice in
   which consumers are charged for unauthorized services in their
15  phone bills. [¶] ... [¶] A relatively new, and growing, scam on
   telephone customers is the imposition of charges on the
16  telephone bill for products or services the customer has not
   bought.... [¶] Often the charges which are 'crammed' on the
17  customer's bill are relatively small, less than $10, and
   inconspicuously labeled. If one does not carefully scrutinize
18  the telephone bill, the crammed charge could easily be
   overlooked."]; Sen. Bill No. 378, approved by Governor, Sept.
19  30, 1998 (Amend.Aug.21, 1998) (1997 1998 Reg. Sess.) ["
   'Cramming' charges are usually comprised of services such as
20  unauthorized voice mail options, Internet access options,
   calling cards, paging services, and 800 numbers. In many
21  cases[,] these unauthorized charges are initiated from
   sweepstakes, raffles, and telemarketers of unknown and
22  unscrupulous companies."].)

23  Assem. Bill No. 2142, 3d reading May 7, 1998, Assem. Floor (1997 1998 Reg. Sess.).

24  31. According to the CPUC, "the practice of cramming has become a serious and

25  widespread problem in California, draining time and money from California consumers and

26  businesses."

27

28
   **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
   7

1    32.    Revised General Order 168, "Market Rules to Empower Telecommunications
2 Consumers and to Prevent Fraud" similarly provides that "Telephone companies may bill
3 subscribers only for authorized charges."

4    33.    Further, the duty of good faith and fair dealing, a part of every contract,
5 requires that T-Mobile not bill any customer for any good or service not authorized by the
6 customer.

7    34.    Upon execution of said Service Agreements and activation of cellular
8 telephone accounts, T-Mobile provides its customers a ten-digit cellular telephone number.

9    35.    Unbeknownst to its customers, T-Mobile often "recycles" "dirty" telephone
10 numbers, numbers that they were previously owned and/or used by other persons or entities
11 and encumbered with pre-existing billing obligations for products and services authorized to
12 be purchased, if at all, by the previous owners and/or users of said numbers.

13    36.    T-Mobile has no effective system, policy or procedure in place for ensuring
14 that the ten-digit cellular phone numbers it provides customers have been properly
15 "screened" and scrubbed "clean" so as to ensure that its customers are not adversely affected
16 by the actions, inactions, obligations and/or encumbrances of previous owners and/or users of
17 the telephone numbers.

18    37.    As a result, T-Mobile has for years been systematically, repeatedly and
19 without authorization, billing its customers for products and services not authorized to be
20 purchased by those customers. Indeed, if such purchases were authorized at all, they were
21 authorized by previous owners and/or users of such telephone numbers. T-Mobile and third-
22 party service providers have, on information and belief, profited greatly from this practice.

23    38.    T-Mobile's unlawful charging is further exacerbated by its failure to strictly
24 comply with various disclosure-related requirements of Public Utilities Code section 2890,
25 making it more difficult for customers to discover the unauthorized charges, realize what
26 their options are, and thereafter dispute said charges.

27

28

39.    Public Utilities Code section 2890(d) provides, in relevant part, as follows:

(d) (1) A billing telephone company shall clearly identify, and use a separate billing section for, each person, corporation, or billing agent that generates a charge on a subscriber's telephone bill. A billing telephone company may not bill for a person, corporation, or billing agent, unless that person, corporation or billing agent complies with paragraph (2).

(2) Any person, corporation, or billing agent that charges subscribers for products or services on a telephone bill shall do all of the following:

(A) Include, or cause to be included, in the telephone bill the amount being charged for each product or service, including any taxes or surcharges, and a clear and concise description of the service, product, or other offering for which a charge has been imposed.

(B) Include, or cause to be included, for each entity that charges for a product or service, information with regard to how to resolve any dispute about that charge, including the name of the party responsible for generating the charge and a toll free telephone number or other no cost means of contacting the entity responsible for resolving disputes regarding the charge and a description of the manner in which a dispute regarding the charge may be addressed. Each telephone bill shall include the appropriate telephone number of the commission that a subscriber may use to register a complaint.

40.    Although required to do so, the bills issued by T-Mobile systematically failed to include information with regard to how to disputes specific charges, failed to include the name of the party responsible for generating the charge, failed to include a toll-free telephone number or other no-cost means of contacting the entity responsible for resolving disputes regarding the charge and a description of the manner in which a dispute regarding the charge may be addressed. T-Mobile's bills also systematically failed to "include the appropriate telephone number of the commission that a subscriber may use to register a complaint," as required by section 2890(d) (2) (b).

41.    According to the CPUC, "[t]he obvious purpose of including the Commission's contact information is to safeguard consumers' Rights to Public Participation and Enforcement (consumers have a right to be informed of their rights and what agency

1   enforces those rights) and Accurate Bills and Redress (consumers have a right to fair, prompt
2   and courteous redress for problems they encounter). Without this information, many or most
3   consumers won't realize what their options are."

4       42.     Public Utilities Code section 2890(e) further requires that "[i]f an entity
5   responsible for generating a charge on a telephone bill receives a complaint from a subscriber
6   that the subscriber did not authorize the purchase of the product or service associated with
7   that charge, the entity, not later than 30 days from the date on which the complaint is
8   received, shall verify the subscriber's authorization of that charge or undertake to resolve the
9   billing dispute to the subscriber's satisfaction." T-Mobile systematically failed to adhere to
10  these "cramming" rules in its treatment of Plaintiff and other affected customers.

11      43.     Pursuant to Public Utilities Code section 2890(d)(2)(D), "[i]f there is a
12  dispute, there is a rebuttable presumption that an unverified charge for a product or service
13  was not authorized by the subscriber and that the subscriber is not responsible for that
14  charge." Plaintiff and the Class dispute said charges and, thus, are entitled to a presumption
15  that said charges were unauthorized.

16

17                              **CLASS ALLEGATIONS**

18      44.     Plaintiff brings this action, pursuant to Federal Rule of Civil Procedure
19  23(b)(2) and (b)(3), on behalf of himself and a class consisting of all T-Mobile wireless
20  telephone subscribers who received a telephone number from T-Mobile and suffered losses
21  or damages as a result of T-Mobile's billing for products and services not authorized by the
22  new owner of the number (the "Plaintiff Class" or "Class"), but, rather, if at all, by a prior
23  owner or user of the number; provided, however, that the following are excluded from this
24  proposed Class: (i) defendant, and (ii) any relative or employee of defendant.

25

26

27

28
    **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
                              10

1      45.    Additionally, Plaintiff brings this action on behalf of a state-wide sub-class

2  (the "Sub-Class") consisting of all members of the Class who entered into subscription

3  contracts within the state of California.

4      46.    The Class and Sub-Class each consist of thousands of individuals and other

5  entities, making joinder impractical, in satisfaction of Rule 23(a)(1).

6      47.    The claims of Plaintiff are typical of the claims of all of the other members of

7  the respective classes.

8      48.    Plaintiff will fairly and adequately represent and protect the interests of the

9  other members of the respective classes. Plaintiff has retained counsel with substantial

10 experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are

11 committed to vigorously prosecuting this action on behalf of the other Class members, and

12 have the financial resources to do so. Neither Plaintiff nor his counsel have any interest

13 adverse to those of the other Class members.

14     49.    Absent a class action, most Class members would find the cost of litigating

15 their claims to be prohibitive, and will have no effective remedy. The class treatment of

16 common questions of law and fact is also superior to multiple individual actions or piecemeal

17 litigation in that it conserves the resources of the courts and the litigants, and promotes

18 consistency and efficiency of adjudication.

19     50.    Defendant has acted and failed to act on grounds generally applicable to the

20 plaintiff and the other members of the respective classes, requiring the Court's imposition of

21 uniform relief to ensure compatible standards of conduct toward the Class members.

22     51.    The factual and legal bases of Defendant's liability to Plaintiff and to the other

23 members of the respective classes are the same, resulting in injury to the plaintiff and to all of

24 the other Class members. Plaintiff and other Class members have all suffered harm and

25 damages as a result of all of Defendant's unlawful and wrongful conduct.

26

27

28

1    52.    There are many questions of law and fact common to the claims of Plaintiff

2  and the other members of the respective class members, and those questions predominate

3  over any questions that may affect individual Class members within the meaning of Rule

4  23(a)(2) and 23(b)(3). Common questions for the Class include but are not limited to the

5  following:

6              (a)    Whether Defendant's conduct described herein is "unjust and

7  unreasonable" as specified in 47 U.S.C. § 201(b); and

8              (b)    Whether Defendant's conduct described herein is in breach of contract.

9        53.    Common questions for the Sub-Class include:

10             (a)    Whether Defendant's conduct described herein is in violation of

11  California's Public Utility Code section 2890;

12             (b)    Whether Defendant's conduct described herein violates California

13  Business and Professions Code sections 17200, *et seq*; and

14             (c)    Whether Defendant's conduct described herein violates California

15  Business and Professions Code sections17500, *et seq*.

16

17                                **COUNT I**
                **(Violation Of 47 U.S.C. § 201 on behalf of the Class)**
18
        54.    Plaintiff incorporates the foregoing allegations.
19
        55.    Section 201 of 47 U.S. Code provides in relevant part as follows:
20
            All charges, practices, classifications, and regulations for and
21          in connection with such communication service [*i.e.*, interstate
            or foreign communication by wire or radio], shall be just and
22          reasonable, and any such charge, practice, classification, or
            regulation that is unjust or unreasonable is declared to be
23          unlawful . . . .

24
        56.    T-Mobile's practice of charging Plaintiff and class members for services they
25
    never ordered or subscribed to is neither just nor reasonable and is in fact unjust and
26
    unreasonable, as set forth in 47 U.S.C. § 201, and violates the said statute.
27

28
    **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
                                12

1    57.    47 U.S.C. § 206, in turn, provides in relevant part:

2            In case any common carrier shall do, or cause or permit to be
             done, any act, matter, or thing in this chapter prohibited or
3            declared to be unlawful . . . such common carrier shall be liable
             to the person or persons injured thereby for the full amount of
4            damages sustained in consequence of any such violation of the
             provisions of this chapter, together with a reasonable counsel
5            or attorney's fee . . . .

6    58.    Finally, 47 U.S. C. § 207 provides in relevant part that

7            Any person claiming to be damaged by any common carrier
             subject to the provisions of this chapter may . . . bring suit for
8            the recovery of the damages for which such common carrier
             may be liable under the provisions of this chapter, in any
9            district court of the United States of competent jurisdiction . . .

10                                   **COUNT II**
11              **(Unauthorized Telephone Charges In Violation Of**
          **California Public Utilities Code § 2890 on behalf of the Sub-Class)**
12
     59.    Plaintiff incorporates by reference the foregoing allegations.
13
     60.    California Public Utilities Code section 2106 provides aggrieved persons the
14
     following private right of action:
15
             Any public utility which does, causes to be done, or permits
16           any act, matter, or thing prohibited or declared unlawful, or
             which omits to do any act, matter, or thing required to be done,
17           either by the Constitution, any law of this State, or any order or
             decision of the commission, shall be liable to the persons or
18           corporations affected thereby for all loss, damages, or injury
             caused thereby or resulting therefrom. If the court finds that
19           the act or omission was willful, it may, in addition to the actual
             damages, award exemplary damages. An action to recover for
20           such loss, damage, or injury maybe brought in any court of
             competent jurisdiction by any corporation or person.
21
     61.    In an effort to deter the unlawful practice of "cramming," *i.e.*, the placing of
22
     unauthorized charges on telephone bills, the California legislature enacted Public Utilities
23
     Code section 2890, which provides, in pertinent part, as follows:
24
                    (a) A telephone bill may only contain charges for
25           products or services, the purchase of which the subscriber has
             authorized.
26

27

28
     COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
                                          13

1

2

3

4

5

6

(b) When a person or corporation obtains a written order for a product or service, the written order shall be a separate document from any solicitation material. The sole purpose of the document is to explain the nature and extent of the transaction. Written orders and written solicitation materials shall be unambiguous, legible, and in a minimum 10 point type. Written or oral solicitation materials used to obtain an order for a product or service shall be in the same language as the written order. Written orders may not be used as entry forms for sweepstakes, contests, or any other program that offers prizes or gifts.

7

8

9

10

(c) The commission may only permit a subscriber's local telephone service to be disconnected for nonpayment of charges relating to the subscriber's basic local exchange telephone service, long distance telephone service within a local access and transport area (intraLATA), long distance telephone service between local access and transport areas (interLATA), and international telephone service.

11

12

13

14

(d) (1) A billing telephone company shall clearly identify, and use a separate billing section for, each person, corporation, or billing agent that generates a charge on a subscriber's telephone bill. A billing telephone company may not bill for a person, corporation, or billing agent, unless that person, corporation or billing agent complies with paragraph (2).

15

16

(2) Any person, corporation, or billing agent that charges subscribers for products or services on a telephone bill shall do all of the following:

17

18

19

20

(A) Include, or cause to be included, in the telephone bill the amount being charged for each product or service, including any taxes or surcharges, and a clear and concise description of the service, product, or other offering for which a charge has been imposed.

21

22

23

24

25

26

(B) Include, or cause to be included, for each entity that charges for a product or service, information with regard to how to resolve any dispute about that charge, including the name of the party responsible for generating the charge and a toll free telephone number or other no cost means of contacting the entity responsible for resolving disputes regarding the charge and a description of the manner in which a dispute regarding the charge may be addressed. Each telephone bill shall include the appropriate telephone number of the commission that a subscriber may use to register a complaint.

27

28

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

14

(C) Establish, maintain, and staff a toll free
telephone number to respond to questions or disputes
about its charges and to provide the appropriate
addresses to which written questions or complaints may
be sent. The person, corporation, or billing agent that
generates a charge may also contract with a third-party,
including, but not limited to, the billing telephone
corporation, to provide that service on behalf of the
person, corporation or billing agent.

(D) Provide a means for expeditiously resolving
subscriber disputes over charges for a product or
service, the purchase of which was not authorized by
the subscriber. In the case of a dispute, there is a
rebuttable presumption that an unverified charge for a
product or service was not authorized by the subscriber
and that the subscriber is not responsible for that
charge. With regard to direct dialed
telecommunications services, evidence that a call was
dialed is prima facie evidence of authorization. If
recurring charges arise from the use of those subscriber
initiated services, the recurring charges are subject to
this section.

(E) If an entity responsible for generating a
charge on a telephone bill receives a complaint from a
subscriber that the subscriber did not authorize the
purchase of the product or service associated with that
charge, the entity, not later than 30 days from the date
on which the complaint is received, shall verify the
subscriber's authorization of that charge or undertake to
resolve the billing dispute to the subscriber's
satisfaction.

62. Defendant violated section 2890 by virtue of its conduct alleged above,
including its billing for products or services, the purchase of which he never authorized,
thereby causing Plaintiff and the members of the class to suffer loss, damage, and injury.

63. Plaintiff and the Class are entitled to actual damages pursuant to Public
Utilities Code sectin 2106. Plaintiff and the Sub-Class are further entitled to exemplary
damages to the extent the evidence shows that Defendant's violations were willful.

///

///

///

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
15

1

2

## COUNT III
### (Breach Of Contract on behalf of the Class)

3     64.    Plaintiff incorporates by reference the foregoing allegations.

4     65.    Plaintiff entered into an agreement with Defendant whereby Plaintiff agreed to

5 pay a certain sum of money in exchange for Defendant's activation of Plaintiff's cellular

6 telephone account and its promise to provide various communication and related services to

7 Plaintiff.

8     66.    Defendant expressly and/or impliedly agreed to provide Plaintiff with a

9 cellular telephone number free of preexisting billing obligations for products and services

10 ordered, purchased and/or authorized by the previous owners and/or users of said telephone

11 numbers.

12     67.    Defendant further expressly and/or impliedly agreed to bill Plaintiff only for

13 products or services the purchase of which he had authorized.

14     68.    Defendant further expressly and/or impliedly agreed to carry out its

15 obligations in good faith and fair dealing.

16     69.    Defendant breached its contractual obligations by providing Plaintiff with a

17 phone number saddled with preexisting obligations, encumbrances and billing arrangements

18 for products and services ordered, purchased and/or authorized, if at all, by the previous

19 owners and/or users of said telephone numbers.

20     70.    Defendant further breached its contractual obligations, including its

21 contractual obligation of good faith and fair dealing, by thereafter billing Plaintiff for

22 products or services, the purchase of which he never authorized.

23     71.    Plaintiff has performed his obligations under the contract.

24     72.    The aforementioned breaches of contract have proximately caused the

25 Plaintiff economic injury and other damages.

26 ///

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

16

1

**COUNT IV**

2
**(Unlawful, Unfair and Deceptive Business Practices in Violation of
California Business & Professions Code § 17200, et seq. on behalf of the Sub-Class)**

3     73.    Plaintiff incorporates by reference the foregoing allegations.

4     74.    The Unfair Business Practices Act proscribes unfair business competition and

5 defines same to include any "unfair," "unlawful," or "fraudulent" business act or practice.

6 California Business & Professions Code §17200 *et seq*.

7     75.    Defendant violated, and continues to violate this proscription through its

8 conduct alleged above, including its unlawful violations of the California Public Utilities

9 Code section 2890, as set forth above in connection with Plaintiff's First Cause of Action.

10     76.    Defendant, through its acts of unfair competition, has obtained money from

11 Plaintiff and members of the proposed Class. Plaintiff and the members of the Sub-Class ask

12 that this Court restore this money to them and enjoin Defendant from continuing its illegal

13 practices.

14     77.    Such conduct is ongoing and continues to this date. Plaintiff, the Sub-Class

15 members and the general public are therefore entitled to the relief described herein.

16

17

**COUNT V**

18
**(False and Misleading Advertising in Violation of
California Business & Professions Code § 17500, et seq. on behalf of the Sub-Class)**

19     78.    Plaintiff incorporates by reference the foregoing allegations.

20     79.    California Business & Professions Code § 17500 provides that:

21     It is unlawful for any person, firm, corporation or association,
or any employee thereof with intent directly or indirectly to
22     dispose of real or personal property or to perform services,
professional or otherwise, or anything of any nature
23     whatsoever or to induce the public to enter into any obligation
relating thereto, to make or disseminate or cause to be made or
24     disseminated from this state before the public in any state, in
any newspaper or other publication, or any advertising device,
25     or by public outcry or proclamation, or in any other manner or
means whatever, any statement, concerning such real or
26     personal property or services, professional or otherwise, or
concerning any circumstance or matter of fact connected with

27

28

1  the proposed performance or disposition thereof, which is
   untrue or misleading, and which is known, or which by the
2  exercise of reasonable care should be known, to be untrue or
   misleading, or for any such person, firm, or corporation to so
3  make or disseminate or cause to be so made or disseminated
   any such statement as part of a plan or scheme with the intent
4  not to sell such personal property or services, professional or
   otherwise, so advertised at the price stated therein, or as so
   advertised.

5

6      80.    Defendant violated, and continues to violate this provision by virtue of its

7  conduct alleged above.

       81.    Defendant, through its acts of unfair competition, has obtained money from
8
   Plaintiff and members of the Sub-Class. Plaintiff and the members of the Sub-Class ask that
9
   this Court restore this money to them and enjoin Defendant from continuing its illegal
10
   practices.
11
       82.    Such conduct is ongoing and continues to this date. Plaintiff, the Sub-Class
12
   members and the general public are therefore entitled to the relief described herein.
13

14
                                    **PRAYER FOR RELIEF**
15
       WHEREFORE, Plaintiff Russell Bradberry, on behalf of himself and the respective
16
   classes, prays for the following relief:
17
                 a)    Certify this case as a class action on behalf of the Class and
18
           Sub-Class as defined above and appoint Russell Bradberry Class
19
           Representative, and appoint John G. Jacobs. and Jay Edelson, as co-lead
20
           counsel;
21
                 b)    Declare that the actions of T-Mobile, as set out above,
22
           constitute a breach of contract, and are in violation of 47 U.S.C. § 201,
23
           California Public Utilities Code § 2890 and California Business and
24
           Professions Code §§17200 and 17500;
25
                 c)    Enter judgment against T-Mobile for all economic, monetary,
26
           actual, consequential, and compensatory damages caused by Defendant's
27

28
   COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
                              18

1    conduct, and if Defendant's conduct is proved willful, award Plaintiff and the

2    Class exemplary damages;

3              d)      Award Plaintiff and the Classes reasonable costs and attorneys'

4    fees;

5              e)      Award Plaintiff and the Classes pre- and post-judgment

6    interest;

7              f)      Enter judgment for an injunctive and/or declaratory relief as is

8    necessary to protect the interests of Plaintiff and the Classes;

9              g)      Award such other and further relief as equity and justice may

10   require.

11

12                                    **JURY DEMAND**

13   Plaintiff requests trial by jury of all claims that can be so tried.

14

15                                          Respectfully submitted,

16   Dated:  October 20, 2006                   LAW OFFICES OF TERRY M. GORDON

17

18

19

20   By:
     TERRY M. GORDON
21   One of the Attorneys for RUSSELL
     BRADBERRY, individually and on
22   behalf of a class of similarly situated
     individuals
23

24

25

26

27

28
     **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
                                        19

1   JOHN BLIM (*PRO HAC VICE* pending)
    JAY EDELSON (*PRO HAC VICE* pending)
2   MYLES MCGUIRE (Of Counsel) (*PRO HAC VICE* pending)
    BLIM & EDELSON, LLC
3   53 West Jackson Boulevard
    Suite 1642
4   Chicago, Illinois 60604
    Telephone: (312) 913-9400
5   Facsimile: (312) 913-9401

6   JOHN G. JACOBS (*PRO HAC VICE* pending)
    BRYAN G. KOLTON (*PRO HAC VICE* pending)
7   THE JACOBS LAW FIRM, CHTD.
    122 South Michigan Avenue
8   Suite 1850
    Chicago, Illinois 60603
9   Telephone: (312) 427-4000
    Facsimile: (312) 427-1850
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
    **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
    20



**EXHIBIT A**

**FOR OFFICE USE ONLY**

Activation Date 11/02/05 ☒New ☐ Add-on Store Name *alert Cellular*
Account #     Agent Code 1556X90 Location Phone 733-047
Onyx Code    Credit Class    For Questions, rate plan changes or other functions, visit my.t-mobile
Salesperson Name *Mary Herrera*   (at t-mobile.com) or call 611 (from T-Mobile wireless) or (800) 937-8997

**CUSTOMER BUSINESS INFORMATION**

Name RUSSELL BERKELEY   Driver's License # & State D2552154 CA
Business Name   E-Mail
Address 3264 PEPPER GRASS DR   Daytime Phone 559 737-7284
  Date of Birth 06/13/1982
City, State, ZIP SAN DIEGO CA 9215   Fax
SS# or Federal Tax ID # 570 71 5871   Password

**SERVICE INFORMATION**

LINE 1 ☐ A Mobile # 619-746-8694   MINUTES INCLUDED 600 whenever
Rate Plan 39.99 Monthly Access Fee   OVERAGE CHARGES   1ST MONTH PRORATED CHARGES 39.97
SIM# 89012600310031355349   OPTIONAL FEATURES   400
IMEI # 35605530119385   ☒Included wknd mins ☐Added 1st plan 4.99
Manufacturer/Model # own phone   ☒Included unl wknds ☐Added
  ☐Included ☐Added

LINE 2 Mobile #   MINUTES INCLUDED
Rate Plan Monthly Access Fee   OVERAGE CHARGES 1ST MONTH PRORATED CHARGES
SIM #   OPTIONAL FEATURES
IMEI #   ☐Included ☐Added
Manufacturer/Model #   ☐Included ☐Added
  ☐Included ☐Added

LINE 3 Mobile #   MINUTES INCLUDED
Rate Plan Monthly Access Fee   OVERAGE CHARGES 1ST MONTH PRORATED CHARGES
SIM#   OPTIONAL FEATURES
IMEI #   ☐Included ☐Added
Manufacturer/Model #   ☐Included ☐Added
  ☐Included ☐Added

**Smart Access Customers Only:**
You have a $150 spending limit. If your balance exceeds $150, T-Mobile may suspend your service until you bring the balance below $100. Even if suspended, you will continue to be liable for all charges incurred. Service Comments: $36.00 NON REFUNDABLE FEE

**PAYMENT**

Security Deposit   Check/Money order #   Reference #
Method of Payment: ☐ Cash ☐ Check ☐ Credit Card ☒ Withdrawal From Bank Account ☐ P.O. ☐ Deferred Payment (Business Accounts Only)
Credit Card Information: ☐ MC ☒ Visa ☐ AmEx ☐ Other
Credit Card # 4060 9500 0041 708 Exp. Date 07/07 Authorization No. 055906
Bank Account Information: Routing Transit #   Account #
**AUTOMATIC PAYMENT FROM CREDIT CARD OR BANK ACCOUNT:** Please charge my monthly T-Mobile service fees to my credit card or bank account. By signing, I authorize T-Mobile to debit my account.
Signature   Date 02 NOV 05

**CUSTOMER INFORMATION**

※ **THIS AGREEMENT INCORPORATES THE T-MOBILE TERMS AND CONDITIONS AND THE FOLLOWING BROCHURES AND MATERIALS:**
Welcome Guide; Welcome Letter; Rates and Services; Coverage Brochure; Coverage Maps; Regional Plan Brochures; T-Mobile for Business Brochure; International Brochure; Handhelds Brochure; Added Value Brochure and other rate plan materials.
■ You have selected a plan with a fixed service term of **at least 12 months**. Our fixed term plans are subject to **a $200 early cancellation fee** per line of service.
■ The monthly access fee and included minutes, if any, will be prorated for the number of days you are actually on service with T-Mobile for your first month.
■ There will be a one time **$35.00 activation fee** per line of service. **A Regulatory Programs fee of 86¢** per line/month applies.
■ **Cancellation and Return Policy.** You may cancel your service within 14 days of your service activation date (30 days in CA) without a cancellation fee. You may also return your Phone to T-Mobile within the same time period for a refund. Other restrictions apply, please see Section 5 of the T-Mobile **Terms and Conditions for a full text of the Cancellation and Return Policy.**
■ We are required to use the residential or business street address you provided, which must be within our licensed service area, to determine certain taxes and fees. If you give us an address (such as a PO box) that is not a recognized street address, you will be assigned a default location for tax and fee calculation, which may result in a higher or lower charge for taxes and fees.

**INITIAL TERM** 12 **MONTHS**   **EARLY CANCELLATION FEE OF $200 PER LINE OF SERVICE**
Customer Initials I understand that if I terminate service for any reason prior to the initial Term, I will pay the Early Termination Fee

# ALERT CELLULAR, LLC

Visalia Mall #2
2031 South Mooney Blvd
Space #5529
Visalia, CA 93277
1-800-716-1755

**INVOICE #   1034253**

**NAME:** RUSSELL BRADBERRY
**HOME PHONE:** 5597397284        **WORK PHONE:**
**ADDRESS:** 3264 PEPPERGRASS DR
**CITY:** SAN DIEGO        **STATE:** CA        **ZIP:** 6891
**PLAN CODE:** T-CLASS CUSTOMERS        **CC AUTH #:** 011379

**DATE:** 11/02/05        **PAYMENT TYPE:** Visa
**SALES PERSON:** HERRERA, MARY        **SALES ID #:** 3954
**INVENTORY LOCATION:** 337        **DEPARTMENT:** VISALIA2
**CARRIER:**

| QTY | ITEM# | DESCRIPTION | PLAN | CELL # | ESN / IMEI | UNIT PRICE | TOTAL |
|---|---|---|---|---|---|---|---|
| 1 | CONVERSION | ACTIVATION ONLY - CONVERSION | T-CLASS | 6194468694 | | 20.00 | 20.00 |
| 1 | TACTFEE | T-CLASS ACT FEE (NONREFUNDABLE) | | | | 75.00 | 75.00 |

## CUSTOMER HELP SURVEY

___ You have seen the personal coverage map and the salesperson verified that there is coverage in your area

___ Your Vicemail can be set by pressing 123 send for T-Mobile and '86 send for Verizon.

___ You can reach your provider by dialing 611 for T-Mobile or *511 for Verizon

___ Your first bill will include a one-time activation fee of $_____ and your bill cycle will start on the _____ of the month. Your first bill will include a prorated amount of $_____ for your partial month of service.

___ I ACCEPT / DECLINE (Circle One) GWG Protection Program and fully understand my coverage. Coverage begins the 31st day and is valid for 1 year from purchase date. Any change o my service needs to be reported to wireless provider and to GWG

___ Unreported changes to handset will void coverage. GWG claim # is 1-888-980-8894.

___ You can check your up-to-date minutes by dialing #646# (T-Mobile) or #646 (Verizon)

___ You feel comfortable with the additional features added to your account and your representative has shown you how they work (Internet, text messaging, etc.)

___ The salesperson has explained to you the _____ year agreement

___ You salesperson's name and number is _____

## TERMS AND CONDITIONS OF SALE

___ DEFECTIVE HANDSETS - Alert will exchange manufacture defective handset under 14 days over the counter. The returned phone must be compatible with box, battery, charger, instruction manual. Anytime after 14 days the carrier will rapid replace the handset through the mail. Alert employees are happy to assist with replacement arrangements.

___ RETURN POLICY- Alert's return policy is 14 days for T-Mobile Phones and Service (30 days in CA) and 3 days for Verizon Phones and Service. All returns must include merchandise in resellable condition with the unmarked original box, instruction manual, battery, homecharger and original invoice. Accessories are non-refundable.

___ REFUNDS may take 4-6 weeks to process.

___ SECONDARY AGREEMENT- I understand the phone sold to me at a discounted price was based on the _____ year contract I signed with the carrier. I authorize my credit card to be charged $350 per line if I terminate this contract for any reason prior to the contract expiration date.

| | |
|---|---|
| SUBTOTAL | 95.00 |
| TAX | 0.00 |
| Exchange Credit | |
| **TOTAL** | **95.00** |

FORM