IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL BRADBERRY, individually and on behalf of a class of similarly situated individuals,<br><br>      Plaintiff,<br><br>  v.<br><br>T-MOBILE USA, INC., a Delaware corporation,<br><br>      Defendant. | No. C 06-6567 CW<br><br>ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION |

Defendant T-Mobile USA, Inc. (T-Mobile) moves to compel arbitration in this action and requests judicial notice of the Federal Communications Commission's Eleventh Annual Report to Congress on the State of Competition in the Commercial Radio Services Industry, http://wireless.fcc.gov/cmrsreports.html (last visited Mar. 23, 2007). Plaintiff Russell Bradberry, individually and on behalf of a class of similarly situated individuals, opposes the motion to compel arbitration. The matter was heard on March 30, 2007. Having considered all of the papers filed by the parties and oral argument on the motion, the Court DENIES the motion to

compel arbitration and DENIES the request for judicial notice.[1]

BACKGROUND

Plaintiff purchased new cellular phone service from one of Defendant's authorized dealers on November 2, 2005, and signed a T-Mobile Off Site Service Agreement. Bradberry Dec. ¶ 2, Ex. A. Plaintiff received an Alert Cellular, LLC invoice and a copy of the signed T-Mobile Off Site Service Agreement. Id. at ¶¶ 2 & 3, Exs. A & B. Plaintiff was not given and never saw a copy of the T-Mobile Terms and Conditions to which the Service Agreement referred. Id. at ¶ 3.

Plaintiff alleges that Defendant recycles previously used, "dirty" phone numbers and gives these recycled numbers to customers when they sign up for new cellular phone service. Amended Complaint, ¶¶ 8-13. These previously used numbers are alleged to be dirty because they are encumbered with pre-existing monthly subscriptions to services. Id. Defendant allegedly continues to charge the new customer for the subscriptions purchased by the previous user of the number. Id. at ¶ 14. Plaintiff alleges that he received such a recycled number when he purchased his new cellular phone service and was charged for a service that he did not request or authorize. Id. at ¶ 19-24.

Plaintiff contacted Defendant and learned that his bills were high because of the charges for the service associated with his

---

[1] Plaintiff's motion to schedule oral argument (Docket no. 35) is GRANTED as oral argument was heard on March 30, 2007. Plaintiff's motion for other appropriate relief with regard to Defendant's reply memorandum and reply declarations (Docket no. 35) is DENIED; the Court has considered Defendant's reply memorandum and declarations.

2

number. Bradberry Dec. ¶ 5. Plaintiff attempted to unsubscribe from the service by contacting both Defendant and the service provider, but had no success. Id. Plaintiff finally contacted the service provider through his counsel. Id. at ¶ 6, Ex. D. The service provider had been authorized to begin charging his cellular phone number for the service on July 13, 2005, three months prior to the time that he signed the Service Agreement. Id.

Plaintiff filed this action in federal court alleging four causes of action against Defendant: (1) violations of 47 U.S.C. § 201;[2] (2) breach of contract and of the duty of good faith and fair dealing; (3) violations of California Public Utilities Code § 2890 and California Public Utilities Commission Revised General Order 168; and (4) violations of the consumer fraud provisions of California Business and Professions Code §§ 17200 and 17500.

Immediately above one of the signature lines, the Service Agreement provides, "All disputes are subject to mandatory arbitration under the T-Mobile Terms and Conditions." Chang Decl., Ex. A. The Service Agreement also provides that "THIS AGREEMENT INCORPORATES THE T-MOBILE TERMS AND CONDITIONS AND THE FOLLOWING BROCHURES AND MATERIALS." Chang Decl., Ex. A (T-Mobile Off Site Service Agreement). The Terms and Conditions provide that "BY ACTIVATING OR USING OUR SERVICE, YOU AGREE TO BE BOUND BY THESE TERMS AND CONDITIONS." Chang Decl., Ex. B (T-Mobile Terms and

---

[2] 47 U.S.C § 201 provides, "All charges, practices, classifications, and regulations for and in connection with [interstate or foreign communication by wire or radio], shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is hereby declared to be unlawful."

3

1  Conditions).

2      The arbitration, class action and jury trial waiver section of
3  the Terms and Conditions provides, in full:

4      MANDATORY ARBITRATION TO RESOLVE DISPUTES/CLASS ACTION
       WAIVER/JURY TRIAL WAIVER: ARBITRATION. PLEASE READ THIS
5      PROVISION CAREFULLY. IT MEANS THAT, EXCEPT AS NOTED
       BELOW, YOU AND WE WILL ARBITRATE OUR DISPUTES. ANY CLAIM
6      OR DISPUTE BETWEEN YOU AND US IN ANY WAY RELATED TO OR
       CONCERNING THE AGREEMENT, OR THE PROVISION OF SERVICES OR
7      PRODUCTS TO YOU, INCLUDING ANY BILLING DISPUTES
       ("CLAIM"), SHALL BE SUBMITTED TO FINAL, BINDING
8      ARBITRATION BEFORE THE AMERICAN ARBITRATION ASSOCIATION
       ("AAA"). This agreement to arbitrate also requires you to
9      arbitrate claims against other parties relating to
       Services or Products provided or billed to you, including
10     suppliers of Services and Products and our retail
       dealers, if you also assert Claims against us in the same
11     proceeding. You and we acknowledge that the Agreement
       affects interstate commerce and that the Federal
12     Arbitration Act and federal arbitration law apply to
       arbitrations under the Agreement (despite the choice of
13     law provision in Sec. 23).

14     BEFORE INSTITUTING ARBITRATION, YOU AGREE TO PROVIDE US
       WITH AN OPPORTUNITY TO RESOLVE YOUR CLAIM BY SENDING A
15     WRITTEN DESCRIPTION OF YOUR CLAIM TO US AT T-MOBILE
       CUSTOMER RELATIONS, P.O. BOX 37380, ALBUQUERQUE, NM
16     87176-7380 AND NEGOTIATING WITH US IN GOOD FAITH
       REGARDING YOUR CLAIM. IF WE ARE NOT ABLE TO RESOLVE YOUR
17     CLAIM WITHIN 30 DAYS OF RECEIPT OF YOUR NOTICE, THEN YOU
       OR WE, INSTEAD OF SUING IN COURT, MAY INITIATE
18     ARBITRATION PROCEEDINGS WITH THE AAA. YOU MUST SERVE OUR
       REGISTERED AGENT (SEE SEC. 20) IN ORDER TO BEGIN AN
19     ARBITRATION. ARBITRATION WILL BE CONDUCTED UNDER THE
       AAA'S PUBLISHED WIRELESS INDUSTRY ARBITRATION RULES AND
20     SUPPLEMENTAL PROCEDURES FOR CONSUMER-RELATED DISPUTES,
       WHICH ARE AVAILABLE BY CALLING THE AAA AT 1-800-778-7879
21     OR VISITING ITS WEB SITE AT www.adr.org. The AAA has a
       fee schedule for arbitrations. You will pay your share of
22     the arbitrator's fees and administrative expenses ("Fees
       and Expenses") except that: (a) for Claims less than
23     $25.00, we will pay all Fees and Expenses; and (b) for
       Claims between $25.00 and $1,000.00, you will pay only
24     $25.00 in Fees and Expenses, or any lesser amount as
       provided under AAA's Supplemental Procedures for
25     Consumer-Related Disputes. You and we agree to pay our
       own other fees, costs, and expenses, including those for
26     any attorneys, experts, and witnesses. An arbitrator may
       only award as much and the type of relief as a court with
27     jurisdiction in the place of arbitration that is

28

> consistent with law and this Agreement. An arbitrator may issue injunctive or declaratory relief but only applying to you and us and not to any other customer or third party. As a limited exception to the agreement to arbitrate, you and we agree that: (a) you may take Claims to small claims court, if your Claims qualify for hearing by such court; and (b) if you fail to timely pay amounts due, we may assign your account for collection, and the collection agency may pursue in court claims limited strictly to the collection of the past due debt and any interest or cost of collection permitted by law or the Agreement.
>
> CLASS ACTION WAIVER. WHETHER IN COURT, SMALL CLAIMS COURT, OR ARBITRATION YOU AND WE MAY ONLY BRING CLAIMS AGAINST EACH OTHER IN AN INDIVIDUAL CAPACITY AND NOT AS A CLASS REPRESENTATIVE OR A CLASS MEMBER IN A CLASS OR REPRESENTATIVE ACTION. NOTWITHSTANDING SEC. 22, IF A COURT OR ARBITRATOR DETERMINES IN A CLAIM BETWEEN YOU AND US THAT YOUR WAIVER OF ANY ABILITY TO PARTICIPATE IN CLASS OR REPRESENTATIVE ACTIONS IS UNENFORCEABLE UNDER APPLICABLE LAW, THE ARBITRATION AGREEMENT WILL NOT APPLY, AND YOU AND WE AGREE THAT SUCH CLAIMS WILL BE RESOLVED BY A COURT OF APPROPRIATE JURISDICTION, OTHER THAN A SMALL CLAIMS COURT.
>
> JURY TRIAL WAIVER. WHETHER ANY CLAIM IS IN ARBITRATION OR IN COURT (AS PROVIDED IN THIS SEC. 2) YOU AND WE WAIVE ANY RIGHT TO JURY TRIAL INVOLVING ANY CLAIMS OR DISPUTES BETWEEN YOU AND US.

Chang Decl., Ex. B (T-Mobile Terms and Conditions).

## REQUEST FOR JUDICIAL NOTICE

Defendant requests that the Court take judicial notice of one document, the Federal Communications Commission's Eleventh Annual Report to Congress on the State of Competition in the Commercial Radio Services Industry, http://wireless.fcc.gov/cmrsreports.html (last visited Mar. 23, 2007).  Plaintiff does not object to the request.

Under Rule 201 of the Federal Rules of Evidence, a court may take judicial notice of facts that are not subject to reasonable dispute because they are either generally known or capable of

5

accurate and ready determination. The Ninth Circuit has held that a court may take judicial notice of records and reports of administrative bodies. Interstate Natural Gas Co. v. Southern California Gas Co., 209 F.2d 380, 385 (9th Cir. 1953).

The Court GRANTS the request and takes judicial notice of the Eleventh Annual Report.

## DISCUSSION

### I. Federal Arbitration Act

Under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., written agreements stating that controversies between the parties shall be settled by arbitration are "valid, irrevocable, and enforceable, save on such grounds as exist in law or at equity for revocation of any contract." 9 U.S.C. § 2. A party aggrieved by the refusal of another to arbitrate under a written arbitration agreement may petition the district court in which an action has been commenced for an order directing that arbitration proceed as provided for in the agreement. 9 U.S.C. § 4. If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." Id. The FAA reflects a "liberal federal policy favoring arbitration agreements." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991) (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)).

Even though the FAA favors arbitration, "arbitration is a matter of contract and a party cannot be required to submit to

6

arbitration any dispute which he has not agreed so to submit." <u>AT&T Technologies, Inc. v. Communications Workers of America</u>, 475 U.S. 643, 648 (1986) (citations omitted). "In determining whether to compel a party to arbitration, a district court may not review the merits of the dispute; rather, the court must limit its inquiry to: (1) whether a valid agreement to arbitrate exists, and, if it does (2) whether the agreement encompasses the dispute at issue." <u>Chiron Corp. v. Ortho Diagnostic Sys., Inc.</u>, 207 F.3d 1126, 1130 (9th Cir. 2000)(citations omitted).

II. Arbitration Agreements

    A. Applicable Law

In determining whether an agreement to arbitrate is valid, federal courts must "apply ordinary state-law principles that govern the formation of contracts." <u>Circuit City Stores v. Adams</u>, 279 F.3d 889, 892 (9th Cir. 2002) (quoting <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1995), <u>cert. den.</u>, 535 U.S. 1112). "General contract defenses such as fraud, duress or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements." <u>Id.</u> (citing <u>Doctor's Assocs., Inc. v. Casarotto</u>, 517 U.S. 681, 687 (1996)); <u>see also</u> <u>Ticknor v. Choice Hotels Int'l, Inc.</u>, 265 F.3d 931 (9th Cir. 2001) (applying Montana contract law to determine validity of arbitration agreement). "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract . . ." Cal. Civ. Code § 1670.5(a).

> Under California law, before a party may be compelled to arbitrate a claim, the petitioning party has the burden of proving the existence of a valid arbitration clause and the dispute is covered by the agreement. If the moving party meets its burden, the opponent of arbitration has to prove by a preponderance of the evidence any defense to the petition or motion to compel the dispute to be arbitrated.

Larian v. Larian, 123 Cal. App. 4th 751, 760 (2004) (citations omitted).

Unconscionability has both a procedural and a substantive component under California law. "Substantive unconscionability focuses on the actual terms of the agreement, while procedural unconscionability focuses on the manner in which the contract was negotiated and the circumstances of the parties." American Software, Inc. v. Ali, 46 Cal. App. 4th 1386, 1390 (1996). Although both procedural and substantive unconscionability must be present before a court will refuse to enforce a contract, they need not be present to the same degree; "the more substantively oppressive the contract terms, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Armendariz v. Found. Health Psychcare Servs., 24 Cal. 4th 83, 114 (2000).

> The procedural unconscionability element focuses on two factors: oppression and surprise. "Oppression" arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. "Surprise" involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms.

Ellis v. McKinnon Broad. Co., 18 Cal. App. 4th 1796, 1803 (1993) (internal citations omitted); see also American Software, Inc, 46

8

Cal. App. 4th at 1390 ("Indicia of procedural unconscionability include oppression . . . and surprise . . .").

Under California law, the procedural unconscionability element of oppression "refers not only to an absence of power to negotiate the terms of a contract, but also the absence of a reasonable market alternative." Morris v. Redwood Empire Bancorp, 128 Cal. App. 4th 1305, 1320 (2005). The "'oppression' factor of the procedural element of unconscionability may be defeated, if the complaining party has a meaningful choice of reasonably available alternative sources of supply from which to obtain the desired goods and services free of the terms claimed to be unconscionable." Id. (citation omitted). Oppression is more likely to be present when the contract at issue is one of adhesion. Morris, 128 Cal. App. 4th at 1319-1320. A contract of adhesion is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." Armendariz, 24 Cal. 4th at 113 (quoting Neal v. State Farm Ins. Co., 188 Cal. App. 2d 690, 694 (1961)).

However, the Ninth Circuit, interpreting California law, held that a contract of adhesion is procedurally unconscionable and that, even if market alternatives are available, the court must consider the party's opportunity to negotiate, modify or waive the contract terms. Ting v. AT&T, 319 F.3d 1126, 1149 (9th Cir. 2003). The availability of market alternatives might not overcome a finding of procedural unconscionability. Id.

Substantive unconscionability focuses on the harshness and

9

one-sided nature of the substantive terms of the contract. <u>A & M Produce Co. v. FMC Corp.</u>, 135 Cal. App. 3d 473, 486-87 (1982). Whether an arbitration agreement is sufficiently bilateral is determined by an examination of the actual effects of the challenged provisions. <u>Ellis</u>, 18 Cal. App. 4th at 1803-04 ("substantive unconscionability . . . refers to an overly harsh allocation of risks or costs which is not justified by the circumstances under which the contract was made").

B.  Analysis

Defendant argues that Plaintiff should be compelled to arbitrate because the Arbitration Clause and the Class Action Waiver are valid and enforceable. Plaintiff argues that these clauses are procedurally and substantively unconscionable.

    1.  Class Action Waiver

        a.  Procedural Unconscionability

Plaintiff argues that the Class Action Waiver is procedurally unconscionable due to oppression and surprise. He argues that the oppression factor arises from the unequal bargaining power between himself and Defendant and his lack of meaningful choice. Plaintiff argues that the surprise factor is fulfilled because the Service Agreement that he signed contained no mention of the Class Action Waiver and he did not receive a copy of the Terms and Conditions which contained the Class Action Waiver.

Defendant argues that the Class Action Waiver contract of adhesion is not <u>per se</u> procedurally unconscionable. Furthermore, Defendant argues that Plaintiff had market alternatives and did not have to purchase cellular phone service from Defendant.

10

Defendant's Service Agreement and Terms and Conditions are a contract of adhesion under Armendariz. Both are portions of a standard-form contract. They were drafted by Defendant, the party with superior bargaining power. Plaintiff was given the option of either adhering to the Service Agreement and the Terms and Conditions without modification or rejecting the contract entirely.

Under Morris, because Plaintiff had little opportunity to bargain, the Service Agreement and the Terms and Conditions are oppressive if Plaintiff had no market alternatives. Defendant argues that Plaintiff had alternative market choices. Neither party provides evidence regarding the availability of alternative sources of cellular phone service without the allegedly unconscionable terms. However, Plaintiff had no opportunity to negotiate, modify or waive the Class Action Waiver because he did not know he was agreeing to such a waiver.

There was no mention of the Class Action Waiver in the Service Agreement or the Alert Cellular, LLC invoice, the only documents given to Plaintiff when he purchased cellular phone service from Defendant. Although the Class Action Waiver appears on the first page of the Terms and Conditions, the Terms and Conditions is a prolix printed form consisting of four pages of small font type. Thus, the Class Action Waiver was a surprise.

Based on oppression and surprise, the Court finds that the Class Action Waiver is procedurally unconscionable.

          b.    Substantive Unconscionability

As Defendant notes, a contract that is procedurally unconscionable may still be enforceable if it is not substantively

11

unconscionable. To determine substantive unconscionability, the Court must assess "the substantive reasonableness of the challenged provision." Ellis, 18 Cal. App. 4th at 1805.

Plaintiff argues that the Class Action Waiver is substantively unconscionable using the two part test set forth in Discover Bank v. Superior Court, 36 Cal. 4th 148, 162-63 (2005).

A class action waiver in a consumer contract of adhesion is substantively unconscionable under Discover Bank, 36 Cal. 4th at 162-63 if (1) it is "in a setting in which disputes between the contracting parties predictably involve small amounts of damages" and (2) the lawsuit involves allegations of "a scheme to deliberately cheat large numbers of consumers out of individually small sums of money."

Defendant argues that Discover Bank is not binding on this Court and that the Ninth Circuit will find Discover Bank preempted by the FAA.[3] Citing Heily v. Superior Court, 202 Cal. App. 3d 255, 260 (1998), Defendant argues that the Discover Bank holding is unique to agreements to arbitrate and that under the FAA, district courts may not "rely upon anything that is unique to an agreement to arbitrate when assessing unconscionability of an agreement governed by the FAA." However, the court in Discover Bank explained that its holding applied "equally to class action

---

[3] Laster v. T-Mobile United States, Inc., 407 F. Supp. 2d 1181 (S.D. Cal. 2005), appeal docketed, No. 06-55010 (9th Cir. Jan. 5, 2006) and Winig v. Cingular Wireless LLC, 2006 U.S. Dist. LEXIS 73137 (C.D. Cal. 2006), appeal docketed, No. 06-16889 (9th Cir. Oct. 12, 2006), two cases relied on by Plaintiff to argue that Discover Bank is not preempted by the FAA, are pending before the Ninth Circuit Court of Appeals.

12

litigation waivers in contracts without arbitration agreements" as well as "to class arbitration waivers in contracts with such agreements." Id. at 165-166. Thus, like the district courts in Winig, 2006 U.S. Dist. LEXIS 73137, *18-19 and Laster, 407 F. Supp. 2d at 1190, the Court finds the Discover Bank holding is not unique to agreements to arbitrate.

Furthermore, even before the California Supreme Court decision in Discover Bank, the Ninth Circuit held that the class action waivers at issue in Ingle v. Circuit City Stores, inc., 328 F.3d 1165, 1175-76 (9th Cir. 2003) (an arbitration clause in an employment adhesion contract prohibiting an arbitrator from hearing an arbitration as a class action) and Ting, 319 F.3d at 1149-50 (a class action waiver in an adhesion contract for residential, long-distance customers) were unconscionable under California law.

Defendant argues that Discover Bank is distinguishable from the present case because the arbitration agreement and class action waiver were contained in a bill stuffer included with a customer's credit card bill, and the consumer could reject them only by closing his account in Discover Bank. However, this was only evidence of the procedural unconscionability in Discover Bank. Discover Bank, 36 Cal. 4th at 161. As noted above, the Court has found procedural unconscionability in the present agreement.

Defendant disputes that this lawsuit involves allegations that it engaged in a scheme deliberately to cheat large number of customers out of small amounts of money. However, in the First Amended Complaint, Plaintiff alleges that Defendant deliberately cheated customers by assigning recycled cellular phone numbers

13

encumbered with pre-existing subscriptions to new users so that it could collect the fees for these subscriptions. Amended Complaint, ¶¶ 52-3. Plaintiff alleges that these fees ranged from ten to at most several hundreds of dollars per person. Id. at ¶ 53. Plaintiff also alleges that T-Mobile benefits monetarily from this procedure because "it has contracted with third-party providers, for a fee, to bill and collect from T-Mobile's customers for third party services which are included directly on a customer's monthly wireless bill." Id. at ¶ 36. These allegations are sufficient to satisfy the second prong of Discover Bank's substantive unconscionability test.

The Court finds that the Class Action Waiver is substantively unconscionable. Because the Court concludes there is procedural and substantive unconscionability, the Court finds that the agreement to waive class actions is unenforceable.

### 2. Arbitration Clause

The Class Action Waiver provides that

> IF A COURT OR ARBITRATOR DETERMINES IN A CLAIM BETWEEN YOU AND US THAT YOUR WAIVER OF ANY ABILITY TO PARTICIPATE IN CLASS OR REPRESENTATIVE ACTIONS IS UNENFORCEABLE UNDER APPLICABLE LAW, THE ARBITRATION AGREEMENT WILL NOT APPLY, AND YOU AND WE AGREE THAT SUCH CLAIMS WILL BE RESOLVED BY A COURT OF APPROPRIATE JURISDICTION, OTHER THAN A SMALL CLAIMS COURT.

Chang Decl., Ex. B. Because the Court has found that the Class Action Waiver is unenforceable, the Arbitration Clause does not apply. The claims brought by Plaintiff may proceed in this Court.

## CONCLUSION

For the foregoing reasons, Defendant's motion to compel arbitration is DENIED and Defendant's request for judicial notice

14

1 is GRANTED.

2     IT IS SO ORDERED.

4 Dated 4/27/07

    CLAUDIA WILKEN
    United States District Judge

**United States District Court**
For the Northern District of California